An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the *North Carolina Rules of Appellate Procedure*.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-976

Filed 1 July 2026

Bladen County, Nos. 24JA000083-080, 24JA000084-080

IN THE MATTER OF: D.J., D.J.

Appeal by Respondent-Mother from orders entered 3 July 2025 and 10 July 2025 by Judge Sarah B. McPherson in Bladen County District Court. Heard in the Court of Appeals 2 June 2026.

> *Miller and Audino, LLP, by Jeffrey L. Miller, for respondent-appellant mother.*
>
> *Mark Hayes, for petitioner-appellee Bladen County Department of Social Services.*
>
> *Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, LLP, by Michael W. Mitchell and Kathryn A. Spangler, for the Guardian ad Litem.*

STADING, Judge.

Respondent-Mother ("Mother") appeals from the trial court's order adjudicating her children, Dan and Denzel,[1] neglected along with the trial court's disposition order. On appeal, Mother contends the trial court lacked subject matter jurisdiction to adjudicate her children neglected and enter an order modifying an

---

[1] We use pseudonyms to protect the identity of minor children. *See* N.C. R. App. P. 42(b).

existing Texas child custody order. To this end, Mother also challenges the trial court's findings of fact as it relates to jurisdiction. Additionally, Mother contends the trial court erred in entering a permanency planning order giving custody to the children's father at the initial disposition, without ceasing reunification efforts with Mother, and prior to a review or permanency planning hearing for the development or implementation of a permanent plan allowing Mother the opportunity to resume her Texas court-ordered custody. For the reasons below, we vacate and remand to the trial court.

## I. Background

On 20 August 2021, a Texas court entered a child custody order granting Mother custody of Dan and Denzel. This order gave the children's father visitation rights. Mother lived in Texas and the children's father was living in North Carolina. In May 2024, Texas Department of Social Services ("TXDSS") opened an investigation upon a report that the children's house did not have running water or electricity. Around this time, a TXDSS social worker contacted Mother, who was traveling through Mississippi. Mother notified TXDSS that she was taking her children to their father in North Carolina for the summer and that she would not be returning to El Paso, Texas. TXDSS closed its investigation since the children were residing in North Carolina.

After delivering her children to their father, for them to stay with him in North Carolina, Mother ceased residing in her Texas house, went to a hotel in New Mexico

for a few weeks, and then returned to Texas to stay with her mother for several more weeks. From there, Mother began residing in Lubbock, Texas, where she later enrolled her children in school.

From 30 May 2024 to 1 August 2024, the children resided with their father in North Carolina. On 2 August 2024, he returned them to their aunt in El Paso, Texas and remained there approximately one week to visit friends. Upon returning to North Carolina, the children's father received a phone call from Mother asking him to come and get the children. On 10 September 2024, Mother delivered the children back to their father for them to stay in North Carolina. Based on his conversations with Mother, the children's father believed the children would remain in North Carolina for an extended period.

On 12 September 2024, two days after the children returned to their father in North Carolina, Bladen County Department of Social Services ("BCDSS") received a report alleging incidents of domestic violence and child abuse with improper discipline concerning Mother and her partner. Following interviews of the father and one of the children, BCDSS obtained nonsecure custody and filed juvenile petitions on 16 September 2024, alleging that the children were abused and neglected juveniles.

BCDSS placed the children temporarily with their father. A report from the BCDSS investigation alleged that Mother's partner had been striking one of the children with a belt and pressing his knuckles into the child's chest until the child

cried. This report also alleged that Mother and her partner had engaged in sexual intercourse and physical altercations in front of the children. Additionally, it was reported that Mother consumed large quantities of alcoholic beverages and there were serious altercations when Mother delivered the children back to their father.

Since the involvement of BCDSS, Mother has resided in North Carolina to be near her children during the pendency of this action. Mother has maintained, however, that she never intended to move to North Carolina. As for the children, they receive food stamps and other benefits in North Carolina. Since 10 September 2024, the children have continuously resided in North Carolina and enrolled in North Carolina schools.

On 28 March 2025, at the jurisdiction and adjudication hearing, the trial court heard testimony relating to subject matter and personal jurisdiction. After considering the evidence, the trial court entered the following oral findings:

> when [Mother] left the State of Texas she stated to a CPS caseworker that she had no intention of returning to El Paso. She testified under oath today that she intended to move out of the State of Texas. New Mexico was an option at that time. Although, she testified today that she never intended to move to the State of North Carolina, her actions indicate otherwise. She has been a resident, she is currently a resident of the State of North Carolina. But she has lived in the State of North Carolina since September of 2024. That there was a lease signed in November of 2024 for a longterm [sic] lease arrangement of six months. She has applied for services out of New Hanover County, North Carolina, that include Medicaid and food stamps. Those services began on October the 1st of 2024.

During July of 2024[,] [Mother] entered into a contract with an investor for the sale of her home in El Paso, Texas. Since that time -- since September of 2024 she has returned to the State of Texas for the purposes of visiting her mother.

And she is no longer a resident of the State of Texas. [The children's father] is a resident of North Carolina and has been so for at least six months prior to the filing of this action. That both juveniles are residents of North Carolina, and have been for the past six months, since August of 2024

Under the UCCJEA for the purposes of modification jurisdiction the State of Texas has lost its exclusive continuing jurisdiction because both children, both parents no longer live in the State of Texas.

Currently all parties are residing in North Carolina. The Court finds that the mother did intend to move out of the State of Texas when she left Texas, and she does in fact currently reside in the State of North Carolina. . . .

Since the initial nonsecure [sic] this Court has exercised emergency jurisdiction based on the allegations in the Petition of abuse and neglect to protect the children. Since that time there has not been an action commenced or filed in the State of Texas. That [Mother] has been back to the State of Texas multiple times over the last six months to visit family, and has returned to North Carolina, and no action has been commenced in the State of Texas during that six-month period.

All right, with respect to the Order, the Court finds that North Carolina is the home state and this Court does have jurisdiction for the modification, or modification jurisdiction, exclusive continuing jurisdiction based on the fact that all parties now currently live and reside in the State of North Carolina and have been here for the past six months.

After concluding jurisdiction was proper, the trial court adjudicated the

children neglected and dismissed the allegation of abuse. On 23 April 2025, the trial court held a disposition hearing. After this hearing, the trial court entered an initial disposition order on 10 July 2025. This order found that: "the juveniles continue in Relative Placement with Respondent Father where they have been with no disruptions since prior to the filing of the verified juvenile petitions. The juveniles appear to be happy, healthy, and thriving in this placement." The order granted legal and physical custody to the children's father after providing that "[i]t is in the best interests of the juveniles that their legal and physical custody be returned to Respondent Father." Additionally, the order suspended Mother's visitation "until the juveniles have been provided with ample time to heal and progress in their Trauma Based Therapy." The trial court noted that it retained jurisdiction to conduct further review hearings and ordered Mother to complete a psychological evaluation and to participate in all aspects of her case plan. Mother now appeals the 3 July 2025 adjudication order and 10 July 2025 initial disposition order.

## II. UCCJEA Jurisdiction

Mother challenges the 3 July 2025 adjudication order and 10 July 2025 initial disposition order. Specifically, Mother contends that the trial court did not have subject matter jurisdiction to adjudicate her children neglected and enter an order modifying an existing Texas child custody order. After careful review, we agree.

As an initial matter, we note that the juvenile petitions, as included in the record on appeal, lacked the information required by N.C. Gen. Stat. §§ 7B-402(b),

50A-209(a) regarding "the places where the child has lived during the last five years" and BCDSS's knowledge "of any proceeding that could affect the current proceeding[.]" *See* N.C. Gen. Stat. §§ 7B-402(b), 50A-209(a) (2025). While this statutory obligation is typically satisfied by filing an "Affidavit as to Status of Minor Child" form, no such affidavit appears in the record despite the contact between BCDSS and TXDSS. *See In re J.H.*, 244 N.C. App. 255, 260, 780 S.E.2d 228, 233–34 (2015); *see also* Form AOC-CV-609 (revised March 2019) (Portion of original in all caps).

### A. Standard of Review

"Subject matter jurisdiction is the threshold requirement for a court to hear and adjudicate a controversy brought before it." *In re J.W.S.*, 194 N.C. App. 439, 446, 669 S.E.2d 850, 854 (2008) (citation omitted). "In matters arising under the Juvenile Code, the court's subject matter jurisdiction is established by statute." *In re K.J.L.*, 363 N.C. 343, 345, 677 S.E.2d 835, 837 (2009). Notably, subject matter jurisdiction cannot be conferred upon a court by consent, waiver or estoppel. *See In re McKinney*, 158 N.C. App. 441, 447, 581 S.E.2d 793, 797 (2003) (citations omitted). "If a court of this State lacks the jurisdiction to decide on a matter, then the whole proceeding is null and void, *i.e.*, as if it had never happened." *In re M.B.*, 288 N.C. App. 351, 358, 886 S.E.2d 553, 559 (2023) (citations and internal quotations omitted).

Our courts have "exclusive, original jurisdiction over any case involving a juvenile who is alleged to be abused, neglected, or dependent." N.C. Gen. Stat. § 7B-

200(a) (2025). "However, the jurisdictional requirements of the Uniform Child Custody Jurisdiction Enforcement Act ("UCCJEA") and the Parental Kidnapping Prevention Act ("PKPA") must also be satisfied for a court to have authority to adjudicate petitions filed pursuant to our juvenile code." *In re E.J.*, 225 N.C. App. 333, 336, 738 S.E.2d 204, 206 (2013) (citing *In re Brode*, 151 N.C. App. 690, 692–94, 566 S.E.2d 858, 860–61 (2002)). "Whether the trial court has jurisdiction under the UCCJEA is a question of law subject to *de novo* review." *In re J.H.*, 244 N.C. App. 255, 260, 780 S.E.2d 228, 233 (2015) (citation omitted).

### B.   Texas Custody Order

"A North Carolina court cannot modify a child-custody determination made by another state" unless certain jurisdictional requirements are met. *In re J.W.S.*, 194 N.C. App. at 446, 669 S.E.2d at 855. In fact, "the courts of this state have an affirmative duty to recognize and enforce a valid child-custody determination made by a court of another state." *In re J.H.*, 244 N.C. App. at 261–62, 780 S.E.2d at 234.

To that end, our statutes provide:

> A court of this State shall recognize and enforce a child-custody determination of a court of another state if the latter court exercised jurisdiction in substantial conformity with this Article or the determination was made under factual circumstances meeting the jurisdictional standards of this Article, and the determination has not been modified in accordance with this Article.

N.C. Gen. Stat. § 50A-303(a) (2025).

In this case, while not included in the record on appeal before us, the trial court

determined that there was "an outstanding Custody Order in the State of Texas that grants Primary Custody to Respondent Mother and grant Respondent Father visitation rights."  Based on this, we conclude that the Texas custody order was an "initial determination" under the UCCJEA.  *See* N.C. Gen. Stat. § 50A-102(8) (2025) (" 'Initial determination' means the first child-custody determination concerning a particular child.").  "Accordingly, we must examine whether the trial court properly exercised subject matter jurisdiction under the UCCJEA."  *In re J.H.*, 244 N.C. App. at 262, 780 S.E.2d at 235.

## C. Modification Jurisdiction

Given the Texas court's entry of an initial child-custody determination for the children, "any change to that [Texas] order qualifies as a modification under the UCCJEA." *In re N.R.M.*, 165 N.C. App. 294, 299, 598 S.E.2d 147, 150 (2004); *see also* N.C. Gen. Stat. § 50A-102(11) (2025); *see also, e.g., In re J.H.*, 244 N.C. App. at 262, 780 S.E.2d at 235.  Thus, we consider whether the trial court had subject matter jurisdiction to modify the Texas custody order.  *See In re J.W.S.*, 194 N.C. App. at 446, 669 S.E.2d at 855.

The jurisdictional requirements for modification under the UCCJEA are as follows:

> Except as otherwise provided in G.S. 50A-204, a court of this State may not modify a child-custody determination made by a court of another state unless a court of this State has jurisdiction to make an initial determination under G.S. 50A-201(a)(1) or G.S. 50A-201(a)(2) and:

> (1) The court of the other state determines it no longer has exclusive, continuing jurisdiction under G.S. 50A-202 or that a court of this State would be a more convenient forum under G.S. 50A-207; or
>
> (2) A court of this State or a court of the other state determines that the child, the child's parents, and any person acting as a parent do not presently reside in the other state.

N.C. Gen. Stat. § 50A-203 (2025). Consequently, a North Carolina court may modify another state's initial child-custody determination only when

> two requirements are satisfied: (1) the North Carolina court has jurisdiction to make an initial determination under G.S. 50A-201(a)(1) or G.S. 50A-201(a)(2); and (2)(a) a court of the issuing state determines either that it no longer has exclusive, continuing jurisdiction under UCCJEA § 202 or that the North Carolina court would be a more convenient forum under UCCJEA § 207; or (b) a North Carolina court or a court of the issuing state determines that the child, the child's parents, and any person acting as a parent do not presently reside in the issuing state.

*In re K.U.-S.G.*, 208 N.C. App. 128, 133, 702 S.E.2d 103, 106 (2010) (quotation marks and brackets omitted).

### 1. *Initial Jurisdiction*

Turning to the first requirement of N.C. Gen. Stat. § 50A-203, that "the North Carolina court has jurisdiction to make an initial determination under G.S. 50A-201(a)(1) or G.S. 50A-201(a)(2)[,]" the incorporated statutes provide:

> Except as otherwise provided in G.S. 50A-204, a court of this State has jurisdiction to make an initial child-custody determination only if:

- 10 -

(1)	This State is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding, and the child is absent from this State but a parent or person acting as a parent continues to live in this State;

(2)	A court of another state does not have jurisdiction under subdivision (1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this State is the more appropriate forum under G.S. 50A-207 or G.S. 50A-208, and:

> a.	The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this State other than mere physical presence; and

> b.	Substantial evidence is available in this State concerning the child's care, protection, training, and personal relationships;

N.C. Gen. Stat. § 50A-201(a)(1)–(2) (2025). For purposes of the UCCJEA,

" '[c]ommencement' means the filing of the first pleading in a proceeding[ ]" and

> "Home state" means the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child-custody proceeding. In the case of a child less than six months of age, the term means the state in which the child lived from birth with any of the persons mentioned. A period of temporary absence of any of the mentioned persons is part of the period.

*Id*. at §§ 50A-102(5), (7) (2025).

Here, with respect to the first requirement of N.C. Gen. Stat. § 50A-203, the parties primarily focus on N.C. Gen. Stat. § 50A-201(a)(2). In fact, it is uncontested

that N.C. Gen. Stat. § 50A-201(a)(1) is not satisfied for North Carolina. Thus, we consider whether N.C. Gen. Stat. § 50A-201(a)(2) is satisfied for the first requirement of N.C. Gen. Stat. § 50A-203 ("a court of this State may not modify a child-custody determination made by a court of another state unless a court of this State has jurisdiction to make an initial determination under . . . G.S. 50A-201(a)(2)[.]").

"A court of this State has jurisdiction to make an initial child-custody determination only if: . . . . [a] court of another state does not have jurisdiction under subdivision (1)[.]" *Id. § 50A-201*(a)(2). Turning again to "subdivision (1)," the inquiry is whether Texas was

> the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding, and the child is absent from this State but a parent or person acting as a parent continues to live in this State[.]

*Id.* § 50A-201(a)(1)–(2) (2025).

Here, we conclude that the "commencement of the proceeding" for purposes of subdivision (1) was 16 September 2024. *Id.* § 50A-102(5); *see also, e.g.*, *In re J.H.*, 244 N.C. App. at 264, 780 S.E.2d at 236. From there, it follows that six months prior to the commencement of the proceeding was 16 March 2024. *See* N.C. Gen. Stat. § 50A-102(7) (" 'Home state' means the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child-custody proceeding. . . . A period of temporary absence of

- 12 -

any of the mentioned persons is part of the period").

However, "temporary absences are considered part of the six-month period immediately preceding the commencement of a child-custody proceeding for purposes of determining a child's home state." *Chick v. Chick*, 164 N.C. App. 444, 449, 596 S.E.2d 303, 308 (2004) (citing N.C. Gen. Stat. § 50A-102(7)). In determining whether an absence is temporary, our courts have adopted a totality of the circumstances approach. *See id.* at 449, 596 S.E.2d at 308. This totality of the circumstances test encompasses the length of the absence and the intent of the parties. *Id.* at 450, 596 S.E.2d at 308. This test also considers "additional circumstances that may be presented in the multiplicity of factual settings in which child custody jurisdictional issues may arise." *Id.* We find *Chick* instructive.

In *Chick*, a mother and father, who were married in North Carolina, moved with their children to Vermont due to financial hardship in August 2001. *Id.* at 445–46, 596 S.E.2d at 306. In January 2002, the children were brought to North Carolina for six weeks. *Id.* at 446, 596 S.E.2d at 306. In February 2002, the children returned to Vermont to resume living with their paternal grandparents. *Id.* The mother was unhappy living in Vermont and wished to return with the minor children to North Carolina where her family was located. *Id.* On 1 July 2002, the mother picked up her children, packed belongings, and took her children to North Carolina, leaving only a note for the father. *Id.* The following day, the mother filed for custody of the minor children in North Carolina. *Id.* Meanwhile, that same day, the father filed for

- 13 -

divorce and sought custody in Vermont. *Id.*

In determining whether Vermont was the home state for purposes of jurisdiction, this Court recognized that it was "uncontested that, save for the six-week period in January and February of 2002, the minor children lived continuously in Vermont from August 2001 to July 2002. . . . Whether Vermont qualifies as the home state of the children turns on whether the minor children's six-week absence constituted a 'temporary absence.'" *Id.* at 448–49, 596 S.E.2d at 307. After considering the totality of the circumstances, our Court rejected deciding the issue "solely on the basis of the parties' intent at the time" given the fluctuations of intent and numerous relocations and decisions. *Id.* at 451, 596 S.E.2d at 309. Instead, our Court noted that "the length of absence from Vermont was a relatively short period of time, especially when compared to the fact that the minor children had spent almost the entire previous year in Vermont." *Id.* at 451, 596 S.E.2d at 309. Thus, in concluding that the children's visit to North Carolina was a temporary absence, our Court held that Vermont was the children's home state. *Id.* at 452, 596 S.E.2d at 309.

Turning to this case, after a pre-adjudication hearing on 3 October 2024, we note the following findings of fact in the trial court's 23 November 2024 pre-adjudication hearing order:

> 7. The juveniles are presently placed together in Relative Placement with Respondent Father, where they have been since prior to the filing of the verified juvenile petitions.

8.      The juveniles were residing here in Bladen County at the time of this filing of the petition but no more than six months prior to the filing of the petition.

9.      North Carolina is not the home state of the juveniles.

10.     There is an outstanding Custody Order in the State of Texas that grants Primary Custody to Respondent Mother and grants Respondent Father visitation rights.

Next, after the adjudication hearing on 28 March 2025, the trial court made the following findings of fact in its 3 July 2025 adjudication order:

7.      With respect to subject matter and personal jurisdiction, the Court did hear sworn testimony from then, BCDSS CPS Social Worker, now BCDSS Social Work Program Manager, Megan Watts[ ], Respondent Mother, and Respondent Father.

8.      Based on the above, said sworn testimony, on or about May 30th, 2024, prior to the end of the school year, Respondent Mother, transported both juveniles to the state of North Carolina while there was an open CPS Investigation in El Paso.

9.      Under oath[,] Respondent Mother testified that she transported the juveniles to North Carolina for their scheduled summer visitation with Respondent Father and to appease/avoid the then active CPS Investigation in El Paso[,] Texas. Respondent Mother informed that she did not intend to return to the state of Texas as a resident.

10.     In sworn testimony, BCDSS Program Manager, Megan Watts, informed the Court that El Paso Social Services Personnel did contact BCDSS Personnel to confirm the juveniles were placed with Respondent Father and requested that BCDSS complete a Home Visit to Respondent Fathers home. The[ ] BCDSS CPS Social Worker, Megan Watts, completed a Home Visit at Respondent Fathers home and found the juveniles to be residing in the residence which was appropriate. BCDSS

Personnel, Megan Watts, informed El Paso Social Services of her findings and the El Paso CPS Investigation was closed based on the fact that the juveniles were no longer in the custody of Respondent Mother and [her partner] . . . .

13.    Under oath[,] Respondent Father testified that at the end of July 2024, Respondent Mother called and informed him that the juveniles were to start school in Lubbock[,] Texas the following week and needed to be returned to Texas. Respondent Father made the appropriate arrangements and transported the juveniles back to the State of Texas but was never able to obtain a physical address for Respondent Mother. Respondent Father transported the juveniles to a Maternal Aunt[']s house in El Paso and remained there with the juveniles for a week awaiting Respondent Mother. Respondent Father had to return to work in North Carolina and the juveniles remained at said Maternal Aunts home.

14.    Two calendar days, after Respondent Fathers return to North Carolina, Respondent Mother contacted Respondent Father to inform him "he needed to come get the kids again." Respondent Father informed Respondent Mother he did not have the financial resources to do so at that instant and he could pick them up in about two weeks. Respondent Father began making financial arrangements to go back to Texas and pick up the juveniles.

15.    About a week after above said contact, Respondent Mother contacted Respondent Father to inform him that she was transporting the juvenile[s] to North Carolina with [her partner]. Respondent Father sent funds to Respondent Mother to assist with the trip.

16.    On or about September 10th, 2024, Respondent Mother transported the juveniles back to the state of North Carolina to "give" them to Respondent Father. This custodian exchange was done outside of the order of the Texas Child Custody Order. Respondent Mother gave Respondent Father very little notice or explanation for the juveniles return to North Carolina.

17.    After the return of the juveniles to North Carolina on September 10th, 2024, BCDSS received a report and upon investigation of said report alleging the juveniles to be Abused and Neglected Juveniles as defined by N.C.G.S. §§ 7B-101(1) and N.C.G.S. §§ 7B-101(15).

Thus, the record demonstrates that from 16 March 2024 until 30 May 2024, the children lived in El Paso, Texas.  From 30 May 2024 to 1 August 2024, the record reveals that the children resided with their father in North Carolina.  As to this nine-week absence, Mother testified that "we had already made the plans to bring them over here with him for the summer."  Mother also testified that under the Texas custody agreement, the children's father had summer visitation for forty-five days.  Although Mother stated it was "up in the air" whether she was moving back to Texas, the record reveals that after visiting the father, the children were to return to Texas for school.

Additionally, the children's father testified that "I had planned to get them, get the boys in June, July, because I wanted them to be able to be here for my birthday, and things of that nature."  Further, the following colloquy occurred regarding the children's presence in North Carolina from 30 May 2024 to 1 August 2024:

> [Attorney:]   Okay.  So at that point you're just exercising that Texas agreement of visitation.
>
> [Father:]      Correct.

Consistent with visitation necessitating a return, the record also demonstrates that from 2 August 2024 to 10 September 2024, the children were returned to Texas.  After

10 September 2024, however, the children have remained in North Carolina. The petitions were filed days later.

Here, after careful review of the record, we conclude that Texas was "the home state of the child[ren] on the date of the commencement of the proceeding," 16 September 2024. N.C. Gen. Stat. § 50A-201(a)(1)–(2); *see also* N.C. Gen. Stat. §§ 50A-102(5), (7). Looking from 16 March 2024, six months prior to the commencement of the proceeding, the children resided in Texas except for an approximate nine-week absence from 30 May 2024 to 1 August 2024. With respect to this nine-week absence, the record demonstrates the children's visit to North Carolina was in accordance with the Texas custody agreement, planned to be temporary, with the intention of the children returning to Texas. *See, e.g., Hammond v. Hammond*, 209 N.C. App. 616, 633, 708 S.E.2d 74, 85–86 (2011). While the trial court found that this nine-week absence was partially prompted by a TXDSS investigation, this does not affect the temporary nature of the absence. Indeed, both Mother and the children's father's testimony reveal the planned temporary nature of the children's summer visit in North Carolina. *See id.*

In addition to the parties' intent, we note that the children remained in North Carolina for nine weeks. As in *Chick*, which held six weeks in North Carolina was a temporary absence, we conclude that the children's nine-week absence from 30 May 2024 to 1 August 2024, in this case, constituted a "temporary absence." *See Chick*, 164 N.C. App. at 451–52, 596 S.E.2d at 309 (citing *Pheasant v. McKibben*, 100 N.C.

- 18 -

App. 379, 396 S.E.2d 333 (1990) and *Plemmons v. Stiles*, 65 N.C. App. 341, 309 S.E.2d 504 (1983)). To be sure, although the children remained in North Carolina longer than the planned visitation, this does not negate the "parties' intent and the length of the absence." *See Chick*, 164 N.C. App. at 450, 596 S.E.2d at 308. Thus, given that the children lived in Texas until 30 May 2024, and the record reflects that both parents intended to coordinate a temporary summer visitation in accordance with the Texas custody agreement, after which the children were to return to Texas, we conclude that Texas was "the home state of the child[ren] on the date of the commencement of the proceeding," notwithstanding their presence in North Carolina from 30 May 2024 to 1 August 2024. *See* N.C. Gen. Stat. § 50A-201(a)(1).

Since Texas was the home state on the date of the commencement of the proceeding, N.C. Gen. Stat. § 50A-201(a)(2) is not satisfied. *See* N.C. Gen. Stat. § 50A-201(a)(2) ("A court of this State has jurisdiction to make an initial child-custody determination only if: . . . . [a] court of another state does not have jurisdiction under subdivision (1)[.]" *Id.* § 50A-201(a)(2). Additionally, it is uncontested that the alternative provision of N.C. Gen. Stat. § 50A-201(a)(2) is unsatisfied because "it is undisputed that no court of another state has declined jurisdiction." *See id.* ("A court of this State has jurisdiction to make an initial child-custody determination only if: . . . . a court of the home state of the child has declined to exercise jurisdiction on the ground that this State is the more appropriate forum under G.S. 50A-207 or G.S. 50A-208"). Accordingly, since it is uncontested that N.C. Gen. Stat. § 50A-201(a)(1) is

unsatisfied, and we conclude N.C. Gen. Stat. § 50A-201(a)(2) is unsatisfied, the first requirement of N.C. Gen. Stat. § 50A-203 is likewise unsatisfied. *See id.* § 50A-203 ("a court of this State may not modify a child-custody determination made by a court of another state unless a court of this State has jurisdiction to make an initial determination under G.S. 50A-201(a)(1) or G.S. 50A-201(a)(2)[.]"). Consequently, the trial court lacked modification jurisdiction under N.C. Gen. Stat. § 50A-203.

Even so, we note that "this conclusion does not end our inquiry since N.C. Gen. Stat. § 50A-203 begins with the phrase: 'Except as otherwise provided in G.S. 50A-204[.]'" *In re J.H.*, 244 N.C. App. at 265, 780 S.E.2d at 236 (citing N.C. Gen. Stat. § 50A-203). Thus, we turn to whether the trial court properly exercised temporary emergency jurisdiction under N.C. Gen. Stat. § 50A-204.

### 2. *Temporary Emergency Jurisdiction*

As discussed, N.C. Gen. Stat. § 50A-203 states: "*Except as otherwise provided in G.S. 50A-204*, a court of this State may not modify a child-custody determination made by a court of another state unless . . . ." N.C. Gen. Stat. § 50A-203 (emphasis added). Thus, a North Carolina court that does not have jurisdiction under N.C. Gen. Stat. §§ 50A-201 or 50A-203 may have temporary emergency jurisdiction under N.C. Gen. Stat. § 50A-204. *See In re J.W.S.*, 194 N.C. App. 439, 449, 669 S.E.2d 850, 856 (2008).

Turning to N.C. Gen. Stat. § 50A-204, that statute provides:

(a) A court of this State has temporary emergency

jurisdiction if the child is present in this State and the child has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse. . . .

(c)      If there is a previous child-custody determination that is entitled to be enforced under this Article, or a child-custody proceeding has been commenced in a court of a state having jurisdiction under G.S. 50A-201 through G.S. 50A-203, any order issued by a court of this State under this section must specify in the order a period that the court considers adequate to allow the person seeking an order to obtain an order from the state having jurisdiction under G.S. 50A-201 through G.S. 50A-203. The order issued in this State remains in effect until an order is obtained from the other state within the period specified or the period expires.

(d)      A court of this State which has been asked to make a child-custody determination under this section, upon being informed that a child-custody proceeding has been commenced in, or a child-custody determination has been made by, a court of a state having jurisdiction under G.S. 50A-201 through G.S. 50A-203 shall immediately communicate with the other court. A court of this State which is exercising jurisdiction pursuant to G.S. 50A-201 through G.S. 50A-203, upon being informed that a child-custody proceeding has been commenced in, or a child-custody determination has been made by, a court of another state under a statute similar to this section shall immediately communicate with the court of that state to resolve the emergency, protect the safety of the parties and the child, and determine a period for the duration of the temporary order.

N.C. Gen. Stat. § 50A-204(a), (c)–(d) (2025).

As the orders for nonsecure custody are unchallenged, we only consider whether the challenged 3 July 2025 adjudication order and 10 July 2025 initial

disposition order was proper under N.C. Gen. Stat. § 50A-204. As to those orders, we cannot conclude that the trial court exercised temporary emergency jurisdiction in accordance with N.C. Gen. Stat. § 50A-204, "because in none of those orders did it 'specify . . . a period that the court considers adequate to allow [BCDSS] to obtain an order' from the Texas court." *In re J.H.*, 244 N.C. App. at 266, 780 S.E.2d at 237 (quoting N.C. Gen. Stat. § 50A-204(c)). "Nor did the trial court 'immediately communicate' with the Texas court." *Id.* (citing N.C. Gen. Stat. § 50A-204(c) and *In re J.W.S.*, 194 N.C. App. at 451–53, 669 S.E.2d at 857–58).

Notwithstanding the foregoing, BCDSS contends that N.C. Gen. Stat. § 50A-204(c)–(d) are non-jurisdictional requirements. That is, BCDSS contends that any failures to comply with N.C. Gen. Stat. § 50A-204(c)–(d) do not affect subject matter jurisdiction. However, in using N.C. Gen. Stat. § 50A-204, "[t]he trial court could only enter an order under its temporary emergency jurisdiction for a specific period of time." *In re E.J.*, 225 N.C. App. 333, 339, 738 S.E.2d 204, 208 (2013) (citation omitted); *see also* N.C. Gen. Stat. § 50A-204(c) (emphasis added) ("any order issued by a court of this State under this section *must* specify in the order a period that the court considers adequate to allow the person seeking an order to obtain an order from the state having jurisdiction under G.S. 50A-201 through G.S. 50A-203."). By not using the procedures mandated in N.C. Gen. Stat. § 50A-204, there is no basis for us to conclude jurisdiction was properly exercised pursuant to N.C. Gen. Stat. § 50A-204. *See In re J.H.*, 244 N.C. App. at 266–67, 780 S.E.2d at 237.

Given that the trial court lacked subject matter jurisdiction under N.C. Gen. Stat. §§ 50A-201; -203; and -204, we must vacate the 3 July 2025 adjudication order and 10 July 2025 initial disposition order. *See id.* Additionally, since the trial court lacked subject matter jurisdiction, we do not address the merits of Mother's remaining arguments. *In re N.R.M.*, 165 N.C. App. 294, 301, 598 S.E.2d 147, 151 (2004); *see also Gerhauser v. Van Bourgondien*, 238 N.C. App. 275, 300, 767 S.E.2d 378, 394 (2014).

### 3. *Texas Custody Order*

As previously noted, the record does not include the Texas order. Accordingly, in addition to vacating the 3 July 2025 adjudication order and 10 July 2025 initial disposition order, we must remand this case to the trial court "to examine the Texas order, communicate with the Texas court if necessary, and determine whether the Texas court was (1) exercising exclusive, continuing jurisdiction; (2) exercising temporary emergency jurisdiction; or (3) not exercising jurisdiction in substantial conformity with the UCCJEA." *In re J.H.*, 244 N.C. App. at 267, 780 S.E.2d at 237–38.

In doing so, we instruct the trial court to communicate with the Texas court under N.C. Gen. Stat. § 50A-110 (2025) to request the Texas court to determine: (1) whether it no longer has exclusive, continuing jurisdiction; and (2) whether a North Carolina court would be a more appropriate or convenient forum. *See* N.C. Gen. Stat. §§ 50A-203(1), -201(a)(2); *see also In re J.H.*, 244 N.C. App. at 268, 780 S.E.2d at 238.

"If the Texas court exercised temporary emergency jurisdiction, we direct the trial court to immediately communicate with the Texas court under N.C. Gen. Stat. § 50A-110 to 'to resolve the emergency, protect the safety of the parties and the child, and determine a period for the duration of the temporary order.' " *In re J.H.*, 244 N.C. App. at 268, 780 S.E.2d at 238 (quoting N.C. Gen. Stat. § 50A-204(d)).  Further, if the trial court determines "that the Texas court was not exercising jurisdiction 'in substantial conformity' with the UCCJEA, the trial court has no duty to recognize or enforce the Texas order and may exercise initial child-custody jurisdiction under N.C. Gen. Stat. § 50A-201(a)(1)." *Id.* (citing N.C. Gen. Stat. § 50A-303(a)).

## III.  Conclusion

After careful review of the record, we hold that the trial court was without subject matter jurisdiction to adjudicate neglect and enter an order modifying the existing Texas child custody order.  Accordingly, we vacate the trial court's 3 July 2025 adjudication order and 10 July 2025 initial disposition order.  However, as the Texas custody order is not in the record before us, we also remand to the trial court for further action not inconsistent with this opinion.

VACATED AND REMANDED.

Judges CARPENTER and GRIFFIN concur.

Report per Rule 30(e).